## Weitz *v.* Weitz.

*Partnerships—Real property—Title passes to heirs of deceased partner, when—Tenancy in common exists, when—Partition —Assets of firm—Surviving partner taking at appraised value—Section 8089, General Code—Consent of probate court and representative of deceased required—Evidence—Reasonableness of refusal of consent—Jurisdiction—Probate court —Appointment of receiver—Section 8091, General Code.*

1. The interest of a deceased partner in real estate purchased with partnership assets, and managed and used by the partnership as partnership property, the title to which is taken in the individual names of the several partners, in the absence of a partnership agreement to the contrary, passes to his heirs or devisees, unless needed to pay partnership obligations.

2. Such real estate is owned by the heirs or devisees of the deceased partner and the surviving partner or partners as tenants in common, and is subject to partition upon the petition of any of the tenants in common.

3. In order that the surviving partner may take the partnership assets at the appraised value he must receive the consent of the administrator or executor of the deceased partner and also the approval of the probate court, as provided by Section 8089, General Code.

4. If the administrator or executor of a deceased partner refuses to give consent, as provided by Section 8089, General Code, to the taking by the surviving partner of the partnership

property at the appraised value, the probate court, on the hearing of the application for its approval, cannot hear evidence and determine whether the refusal of the administrator or executor to give consent is reasonable or not.

5. If the surviving partner fails to take the partnership property at the appraised value on account of the refusal of the administrator or executor of the deceased partner to give consent, the probate court has jurisdiction to appoint a receiver to wind up and dispose of the partnership assets under the provision of Section 8091, General Code.

(Decided September 23, 1921.)

APPEAL: Court of Appeals for Trumbull county.

*Mr. J. J. Boyle* and *The Gillmers & Stephens,* for plaintiff.

*Messrs. Moore, Barnum & Hammond,* for defendant.

POLLOCK, J. In 1900 William Weitz and Lawrence Weitz formed a partnership to engage in the butcher or meat business in the village of Hubbard, Trumbull county. This partnership continued until the death of Lawrence Weitz, which occurred on February 20, 1920. He died leaving a will, in which he nominated his widow, Hannah Weitz, executrix, and also devised his property to her. After his death this will was probated in the probate court of that county and Hannah Weitz was appointed executrix of the will. After that William Weitz, as surviving partner, caused an appraisement, under the provisions of Section 8085, General Code, of the property that he claimed to be partnership assets, consisting of both personal and real property. He afterwards elected to take this property at the appraised value, as provided by Section 8089, General Code. The executrix of Lawrence Weitz refused to

give her consent and the probate court refused to make an order giving William Weitz the right to take the property upon his offer to comply with the conditions of the Code. From this judgment of the probate court William Weitz appealed to the court of common pleas, and also filed a petition in error in that court. While these proceedings were pending in the common pleas court, Hannah Weitz, the executrix of Lawrence Weitz, filed an application in the probate court asking that a receiver be appointed to wind up and dispose of the partnership property, under the provisions of Section 8091, General Code. Upon a hearing of that application the probate court ordered that a receiver should be appointed. From this judgment William Weitz caused an appeal to be taken to the court of common pleas, and also filed a petition in error in that court.

About the same time that Mrs. Weitz filed her application in the probate court for the appointment of a receiver she also brought an action in the common pleas court of this county seeking to partition the real estate which William Weitz claimed belonged to the partnership property and the title to which was in the joint individual names of William and Lawrence Weitz. She described this property in five different tracts. Upon the hearing of the first four actions in the court of common pleas the court dismissed the two actions on appeal, on the ground that the court did not have jurisdiction in appeal, and affirmed the judgment of the probate court in each of the error cases. Upon the hearing on the petition in partition the court found in favor of the plaintiff and ordered that the real estate described in the petition should be partitioned between William Weitz and Hannah Weitz, the devisee of Lawrence Weitz.

From the judgments of the court of common pleas
in the actions originating in the probate court error
was prosecuted to this court and the action in partition was appealed. We will first consider the partition case on appeal in this court.

It appears from the evidence that prior to the
death of the father of William and Lawrence Weitz,
which occurred many years before 1900, he had
owned what is known as the home tract in the village of Hubbard, and was engaged in the butcher
business. There was a dwelling-house on this tract,
which was occupied by the father and his family,
and also a store room that the father used as a meat
market. After his death the business was continued
by his wife, Catherine Weitz, until 1900, when she
sold the butcher business to William and Lawrence
Weitz. They formed a partnership and continued
the business under the name of the Weitz Brothers,
until the death of Lawrence. Mrs. Weitz continued
to live in the residence part of this property until
her death in 1911. Some time after entering into
this contract of partnership, William and Lawrence
Weitz purchased from their mother, Catherine
Weitz, the parcel of land known as "tract 5," the
rink property. This property was conveyed to them
by deed from Catherine in their individual names.
It was paid for by partnership money and the proceeds received from this property, whether by rent
or otherwise, were deposited with the partnership
funds in the bank, and the repairs, taxes, etc., on
the property were paid out of partnership money.

After that they purchased what is known as the
Lamp property. It was conveyed to William Weitz
and Lawrence Weitz in the same way as the first
tract. Catherine Weitz died in 1911, owning
the three remaining properties. There were

nine heirs of Catherine Weitz. Soon after her death the heirs of Catherine Weitz entered into an agreement by which the remaining seven heirs sold and conveyed by deed their interests to William Weitz and Lawrence Weitz, individually. William Weitz and Lawrence Weitz each inherited one-ninth of this property from their mother. The meat market was still conducted in a room in the building on this property. On one of the tracts there was a dwelling-house built by the partnership, and a part of one tract was sold; but the remainder continued in their names until the death of Lawrence. The tract known as the farm tract had a slaughter-house on it, and was used by the partnership largely for that purpose, and for pasturing cattle and other stock. The purchase price of all of these properties was paid in the same way as the first, and the returns therefrom were deposited and the improvements made in the same way. These brothers not only conducted a meat market, but they also bought and sold stock of all kinds, wool and grain, and did other business in the name of the Weitz Brothers, depositing the money received from all the transactions in the partnership name, and paying all the debts incurred thereby out of this fund. The partnership agreement between these brothers was verbal. They never entered into a formal partnership agreement. When they purchased the butcher or meat business from their mother, they started to do business in the name of Weitz Brothers, each having an equal interest in the business. They continued doing all the business in the way that we have briefly stated until the death of Lawrence. There was never any agreement that any of the real estate should be held as partnership property or disposed of as partnership assets.

From the evidence it appears that all of the debts of this firm had been paid prior to the appraisement of the partnership property, except a few small debts, and there is ample personal property of the firm to pay these debts. We do not have any question regarding the rights of creditors to the real estate which is claimed to belong to the partnership, but only the question arising between the surviving partner and the devisee of the deceased partner, after the dissolution of the partnership by his death, as to the real estate purchased with partnership funds and managed as partnership property, the title to which is in the joint individual names of the partners, and which is not needed to pay any partnership obligation. Is such real estate partnership assets to be disposed of in the settlement of the partnership business, or real estate owned by the surviving partner and the devisee of the deceased partner as tenants in common?

The question of the character of real estate purchased and treated by the partnership as this property was has been before the courts of this country very frequently, usually arising on questions between creditors of the partnership and creditors of the individual partners, but quite frequently between the surviving partner and those interested in the estate of a deceased partner. The holdings of the courts have not been uniform.

Let us first notice the decision of the supreme court of this state in the case of *Greene* v. *Surviving Partners of Wm. Greene & Co.*, 1 Ohio, 535. The question before the court was whether the widow of the deceased partner was entitled to dower in the partnership real estate, where the deceased partner's estate was insolvent, the property being needed to pay the partnership obligations and the articles of

copartnership stipulating, among other things, that on the dissolution of the partnership the property of the concern should all be sold and the proceeds applied first to the payment of the debts owed by the partnership. The court held that she was not entitled to dower, placing the judgment upon the ground of the insolvency of the partnership and the agreement that on dissolution of the partnership the property of the concern should all be sold and the proceeds applied first to the payment of partnership debts.

A somewhat similar question was before the court again in the case of *Greene* v. *Graham,* 5 Ohio, 264. In that case a father and son were partners, the father dying. After his death it was found that the personal estate of the father was insufficient to pay his debts. Application was made by the administrator to sell his undivided interest in the partnership land to raise funds to pay his debts. This was granted and the property sold to a third party. After purchasing it the third party brought a proceeding in partition, which was granted, the court saying:

"We think these partners took this property as tenants in common, and that the interest of the elder Pugh descended at his death to his heirs at law, subject to the right of his administrators to dispose of it, under the law, to pay his debts."

The question was again before the supreme court in the case of *Rammelsberg* v. *Mitchell,* 29 Ohio St., 22. The court holds in the seventh proposition of the syllabus:

"But real estate not needed or used for the partnership purposes, though paid for with partnership means, is not assets of the firm within the meaning of this act, notwithstanding the rents and profits thereof be applied to partnership uses."

On page 52 the court discusses the question of the character of real estate held by a partnership when it is not needed to pay the debts. The court says:

"In such case, upon the death of the person holding the legal title, it descends to his heir at law in trust for the benefit of the partnership—at least to the extent that it may be needed to satisfy demands against the partnership, whether such demands exist in favor of a stranger or a member of the copartnership. This doctrine is quite familiar, as is also the doctrine that in such case the realty is regarded and treated as personal property in the hands of the partnership to the extent it may be needed for partnership liabilities."

On page 53 the court recognizes the rule announced in *Greene* v. *Greene, supra,* and says that it does not see the necessity of such an agreement being in writing, but undoubtedly the intention to convert out and out should be made to appear clearly. It will be seen by reading further in the opinion that where the intention to convert does not appear the court recognizes the right of the heirs of the deceased party to hold the real estate not needed for partnership obligations as tenants in common with the surviving partner. So that we think the rule is recognized in this state that where real estate is purchased with partnership funds and treated as partnership property, if there is an agreement that it shall be converted and become personal property, it remains personal property after the death of one of the partners, and should be disposed of as assets, but that where there is no agreement, and the property was purchased with partnership funds and managed by the partnership, upon the death of one of the partners, the real estate not being required

to pay any partnership obligations, the interest of the deceased partner descends to his heirs or devisees and should be treated as real estate.

This question was before the court of appeals of New York in the case of *Darrow* v. *Calkins,* 154 N. Y., 503 (48 L. R. A., 299), and on page 515 the court announces what it declares is the clear current of American decisions, as follows:

"On the death of either partner, where the title is vested in both, the share of the land standing in the name of the deceased partner descends as real estate to his heirs, subject to the equity of the surviving partner to have it appropriated to accomplish the trust to which it was primarily subjected. The working out of the mutual rights which grew out of the partnership relation does not seem to require that the character of the property should be changed until the occasion arises for a conversion and then only to the extent required. The American rule commends itself for its simplicity. It makes the legal title subservient in equity to the original trust. It disturbs it no further than is necessary for this purpose."

In 27 L. R. A., 340, under the case of *Woodward-Holmes Company* v. *Nudd,* there is an extensive annotation of the different holdings on this question. On page 353 of this note we find the following:

"In the absence of any agreement between the partners, express or implied, to the contrary, both the legal title and the beneficial interest in the surplus of partnership real estate, after the debts and the equities of the partnership are satisfied, descend to the heir-at-law."

And numerous authorities are cited in support of the principle.

In *Buchan* v. *Sumner,* 47 Am. Dec., 305 (2 Barbour's Chancery, 165), the court in the syllabus says:

"Partnership realty in America, as a general rule, is, in equity, chargeable with the debts of the firm, and with any balance due between the partners on winding up the concern; but the share of a deceased partner in the surplus, after the debts are paid, and the equities between the partners are adjusted, is regarded as realty, going to the heir rather than to the personal representative."

This rule being not only simple but making it easy for the parties to determine their interests in the property seems to us to be the reasonable rule. Real estate purchased and deeded to the parties in their individual name remains real estate, but by a fiction of law is held to be personal, for the reason that it would be a fraud on the partnership creditors to permit partners, or their individual creditors, to profit by partnership funds placed in real estate in the individual names of the partners to the exclusion of the partnership creditors. When there is no need to continue this fiction it should not be continued, the property should then be treated as real estate, and descend to the heirs or devisees of the deceased partner. They hold it as tenants in common with the surviving partners. Under that principle the heirs or devisees of the deceased partner and the surviving partner have equal rights in the property to the extent of their individual interests. Otherwise it must be disposed of by the surviving partner or receiver under the order of the probate court, and the interest of the deceased party turned over to the administration of his estate, which would be expensive and in-

equitable to the heirs or devisees of the deceased partner.

'Viewing the rights of the parties to the real estate in this case as we do we need not refer to the many legal questions urged by counsel, arising by reason of the use which the partnership made of the different tracts.

A decree in partition is granted partitioning the real estate described in the petition between the surviving partner, William Weitz, and the devisee of the deceased partner. The action is certified to the court of common pleas for further proceedings according to law.

We come now to the cases begun in the probate court. As we have stated, the executrix of Lawrence Weitz having been appointed, William Weitz, surviving partner, took the proper steps to have the property which he claimed belonged to the partnership appraised, filed that appraisement with the probate court, and elected to take the property at the appraised value, but the executrix refused her consent under Section 8089, General Code. For this reason the probate court refused to approve the application. It is urged that this executrix had no reason for withholding her consent; that she arbitrarily refused; and that it was the duty of the probate court, notwithstanding her refusal, to approve the application and decree this property to William Weitz. We think this statute is too plain for discussion. The Code provides that a surviving partner can take the partnership property at the appraised value upon the executor or administrator giving consent and the probate court approving the application. It requires the independent action of the executor or administrator, which

ever it is that is settling the estate of the deceased partner, and the probate court. The reason for the refusal of the legal representative of the deceased partner to give consent cannot be inquired into by the probate court. There was no error in the probate court refusing to decree the partnership property to the surviving partner.

Section 8091, General Code, provides, in the event that such surviving partner or partners refuse or neglect to take the interest of the deceased partner, that upon the application of the executor or administrator the probate court shall appoint a receiver for the partnership property. This application was made by the executrix after the court had entered its judgment refusing to decree the partnership property to William Weitz. Upon the hearing the court granted the application.

It is urged that Section 8091 only applies if the surviving partner refuses or neglects, and in this case William did not refuse or neglect to take the property, but was prevented by the action of the executrix.

The Code provides for a complete settlement of the partnership business if the surviving partner takes the partnership property at the appraisement. In case he refuses or neglects to take the partnership property, a receiver is appointed, who must proceed to wind up and dispose of the assets in accordance with the statute governing receivers. The probate court is given complete jurisdiction to appoint and control the receiver. It is evident that the legislature intended to confer on the probate court jurisdiction, upon the death of one of the partners, to settle the partnership business; and it would be placing too strict a construction upon the

provision of the Code to hold that if the surviving partner was unable to take the partnership property at the appraised value, on account of the refusal of the administrator or executor of the deceased partner to give consent, the probate court was deprived of jurisdiction to appoint a receiver.

We think this section should apply where there is a failure for any reason to decree the property to the surviving partner. A receiver should be appointed to dispose of the partnership property. Of course, under the holding of this court, only the personal property remains as partnership assets.

The judgment of the court of common pleas in all of the cases originating in the probate court is affirmed.

*Decree in partition in case originating in court of common pleas.*

*Judgments of common pleas court affirmed in the cases originating in probate court.*

FARR and ROBERTS, JJ., concur.